

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY 2020 SEP -9 P 2:50

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 20- CR- 764 |
| | : | |
| | : | 18 U.S.C. §§ 1349, 1347, 1343, 1035 |
| v. | : | 371, 1956(h), 1957, and 2 |
| | : | |
| | : | |
| KEITH RITSON and | : | INDICTMENT |
| FRANK ALARIO | : | |

The Grand Jury in and for the District of New Jersey, sitting in Camden, charges:

## COUNT 1
### (Conspiracy to Commit Health Care Fraud and Wire Fraud)

1.     At all times relevant to this Indictment:

a.     Defendant KEITH RITSON was a pharmaceutical sales representative and the founder of Life Sciences Medical LLC.

b.     Defendant FRANK ALARIO was a medical doctor who practiced medicine at medical offices in Marlboro, Bayville, and Whiting, New Jersey; Stuart and Hollywood, Florida; and New York, New York.

c.     Life Sciences Medical LLC was a New Jersey Limited Liability Company founded and controlled by defendant KEITH RITSON.

d.     William Hickman, who is named as a co-conspirator but not as a defendant herein, was a pharmaceutical sales representative who operated Boardwalk Medical LLC.

e.     Boardwalk Medical LLC was a New Jersey Limited Liability Company operated by William Hickman that had an agreement with Central Rexall Drugs, Inc. ("Central Rexall") pursuant to which Central Rexall would pay Boardwalk Medical LLC a percentage of the

1

amount that Central Rexall received from Pharmacy Benefits Administrator for prescriptions obtained by Boardwalk Medical LLC and its associates, including defendant KEITH RITSON.

      f.      Defendant KEITH RITSON, through Life Sciences Medical LLC, received payments from Boardwalk Medical LLC for Central Rexall prescriptions he obtained, including those authorized by defendant FRANK ALARIO.

      2.      At all times relevant to this Indictment:

      a.      In New Jersey, the State Health Benefits Program ("SHBP") offered medical and prescription drug coverage to qualified state and local government public employees, retirees, and eligible dependents. The School Employees' Health Benefits Program ("SEHBP") offered medical and prescription drug coverage to qualified local education public employees, retirees, and eligible dependents. SHBP and SEHBP each were "health care benefit programs" that affected commerce as defined in 18 U.S.C. § 24(b).

      b.      "Pharmacy Benefits Administrator" provided pharmacy benefit management services for SHBP and SEHBP beneficiaries and other insurance plan beneficiaries pursuant to contracts with the insurance plans. Pharmacy Benefits Administrator adjudicated claims for reimbursement from pharmacies and paid pharmacies for valid claims. Pharmacy Benefits Administrator then billed the insurance plans based on the amount paid to the pharmacies for the claims. Pharmacy Benefits Administrator was a "health care benefit program" that affected commerce as defined in 18 U.S.C. § 24(b).

      c.      In general, compounding was a practice in which a licensed pharmacist combined, mixed, or altered ingredients of one or more drugs in response to a prescription to create a medication tailored to the medical needs of an individual patient. Compounded drugs were not

2

approved by the United States Food and Drug Administration ("FDA"); that is, the FDA did not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.

        d.     Compounded drugs could be appropriately prescribed by a physician when an FDA-approved medication did not meet the health needs of a particular patient. For example, if a patient was allergic to a specific ingredient in an FDA-approved medication, such as a dye or preservative, a compounded drug could be prepared excluding the ingredient that triggers the allergic reaction.

        3.     Central Rexall was a pharmacy located in Louisiana that prepared compounded medications. When Central Rexall received a prescription for a compounded medication for an individual with prescription drug coverage administered by Pharmacy Benefits Administrator, Central Rexall would electronically verify coverage with Pharmacy Benefits Administrator, fill the prescription by mailing the medication to the individual, bill Pharmacy Benefits Administrator for the prescription, and receive payment from Pharmacy Benefits Administrator.

        4.     From in or about August 2014 through in or about February 2016, in the District of New Jersey, and elsewhere, defendants

KEITH RITSON and
FRANK ALARIO

did knowingly and intentionally conspire and agree with each other and others to commit certain offenses, namely:

        a.     To knowingly and willfully to execute a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, or under the custody and control of, a health care benefit program in connection with the delivery of and

3

payment for health care benefits, items, and services, contrary to Title 18, United States Code, Section 1347; and

b.     To devise a scheme and artifice to defraud, and to obtain money and property by means of materially false pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, and sounds, contrary to Title 18, United States Code, Section 1343.

### Object of the Conspiracy

5.     It was the object of the conspiracy for defendants KEITH RITSON, FRANK ALARIO, William Hickman, and others to unlawfully obtain money and other benefits for themselves and each other by causing the submission of false and fraudulent insurance claims for prescription medications to Pharmacy Benefits Administrator.

### Manner and Means of the Conspiracy

6.     It was part of the conspiracy that defendant KEITH RITSON, defendant FRANK ALARIO, William Hickman, and others learned that Pharmacy Benefits Administrator would reimburse up to thousands of dollars for an individual's one-month supply of certain prescription medications from Central Rexall, including vitamins, scar creams, pain creams, anti-fungal gels, and libido creams.

7.     It was further part of the conspiracy that defendant KEITH RITSON and others recruited individuals who had prescription drug benefits administered by Pharmacy Benefits Administrator and who would agree to receive Central Rexall prescription medications, regardless of their need for the prescription medications.

8.    It was further part of the conspiracy that the individuals directly recruited by defendant KEITH RITSON did not have a prior doctor/patient relationship with defendant FRANK ALARIO, but that defendant FRANK ALARIO nevertheless signed prescriptions for the individuals without examining, meeting, or consulting with them prior to authorizing the prescriptions.

9.    It was further part of the conspiracy that defendant FRANK ALARIO signed Central Rexall prescriptions for defendant KEITH RITSON, even though defendant KEITH RITSON was not his patient and did not have a doctor/patient relationship with him.

10.    It was further part of the conspiracy that defendant KEITH RITSON and defendant FRANK ALARIO identified established patients of defendant FRANK ALARIO's medical practices who had prescription drug benefits administered by Pharmacy Benefits Administrator that would pay for the Central Rexall prescriptions.

11.    It was further part of the conspiracy that defendant KEITH RITSON provided defendant FRANK ALARIO with pre-printed Central Rexall prescription forms, which were often kept readily available in patient exam rooms utilized by defendant FRANK ALARIO at the medical offices where he practiced.

12.    It was further part of the conspiracy that defendant FRANK ALARIO permitted defendant KEITH RITSON—a sales representative who was not employed by or affiliated with the medical offices where defendant FRANK ALARIO practiced—to have access to areas of the medical offices which non-staff members were typically prohibited from accessing, including areas with office computers, fax machines, and medical files.

13.     It was further part of the conspiracy that defendant FRANK ALARIO permitted defendant KEITH RITSON to enter the medical practices through the employee entrances, and to be present in the office both during and outside of normal hours of operation.

14.     It was further part of the conspiracy that defendant FRANK ALARIO allowed defendant KEITH RITSON to have access to patients' confidential, individually identifiable health information or protected health information.

15.     It was further part of the conspiracy that, on at least one occasion, defendant FRANK ALARIO and defendant KEITH RITSON accessed individually identifiable health information or protected health information on a computer in defendant FRANK ALARIO's medical offices for the purpose of determining whether patients' insurance would cover compound prescription medications.

16.     It was further part of the conspiracy that defendant FRANK ALARIO frequently would bring defendant KEITH RITSON into patient exam rooms during patient visits for the purpose of prescribing the compound medications marketed by defendant KEITH RITSON to individuals who had prescription drug benefits administered by Pharmacy Benefits Administrator.

17.     It was further part of the conspiracy that, during their patient visits, defendant FRANK ALARIO would inform patients who had prescription drug benefits administered by Pharmacy Benefits Administrator—many of whom trusted him based on their established doctor/patient relationships—that he was going to write prescriptions for the compound prescription medications that were promoted by defendant KEITH RITSON.

18.     It was further part of the conspiracy that defendant KEITH RITSON and defendant FRANK ALARIO did not disclose to patients that defendant KEITH RITSON would make money

on the medications prescribed by defendant FRANK ALARIO and promoted by defendant KEITH RITSON.

19.    It was further part of the conspiracy that, in bringing defendant KEITH RITSON into patient exam rooms to meet with them, defendant FRANK ALARIO would often introduce defendant KEITH RITSON as his nephew or give patients the impression that defendant KEITH RITSON was an employee or affiliated with the medical practice.

20.    It was further part of the conspiracy that defendant KEITH RITSON would hear, see, and/or have access to individually identifiable health information and protected health information by being present in the patient exam room with defendant FRANK ALARIO during patient exams and appointments.

21.    It was further part of the conspiracy that, on other occasions when defendant KEITH RITSON was not present in patient exam rooms, defendant FRANK ALARIO would instruct his patients to see defendant KEITH RITSON in another part of the office for the purpose of providing defendant KEITH RITSON with their patient information so that defendant KEITH RITSON could fill out compound medication prescriptions that would be authorized by defendant FRANK ALARIO.

22.    It was further part of the conspiracy that, in other instances, defendant FRANK ALARIO would inform patients of his medical practices who had prescription drug benefits administered by Pharmacy Benefits Administrator that he was going to prescribe them a compound prescription medication, but often without fully explaining to the patients what the medication was for or why he was prescribing it for them.

23.    It was further part of the conspiracy that, in other instances, defendant FRANK ALARIO would discuss certain medications with patients, but the patients then would receive

additional medications authorized by defendant FRANK ALARIO that they did not discuss with defendant FRANK ALARIO.

24.    It was further part of the conspiracy that defendant FRANK ALARIO prescribed compound medications because of their high adjudication rates and because he sought to assist and financially benefit defendant KEITH RITSON, and not because the medications were medically necessary.

25.    It was further part of the conspiracy that, in at least one instance, defendant FRANK ALARIO wrote a prescription in the name of a patient who had prescription drug benefits administered by the Pharmacy Benefits Administrator when the medication was actually intended for another who did not have the requisite insurance.

26.    It was further part of the conspiracy that defendant FRANK ALARIO or defendant KEITH RITSON would often select on the pre-printed prescription forms the highest number of refills available for a medication for the sole purpose of maximizing profit and not because the patients needed or requested the refills.

27.    It was further part of the conspiracy that when Pharmacy Benefits Administrator stopped covering a particular medication and Central Rexall substituted a different combination of ingredients, defendant FRANK ALARIO authorized replacement medications that were not equivalent to the initial medication without further examining or talking to the patients about the change in medication.

28.    It was further part of the conspiracy that after defendant FRANK ALARIO authorized a prescription, he did not return the prescription to the patient to be filled at a pharmacy of his/her choosing.  Instead, defendant KEITH RITSON and/or defendant FRANK ALARIO

caused the prescription to be faxed to Central Rexall, which filled the prescription and billed Pharmacy Benefits Administrator.

29.     It was further part of the conspiracy that, for the prescriptions that defendant KEITH RITSON arranged and defendant FRANK ALARIO authorized, defendant KEITH RITSON would receive, personally and/or through Life Sciences Medical LLC, payment from Boardwalk Medical LLC, which was a percentage of the amount that Central Rexall received from Pharmacy Benefits Administrator for the medications.

30.     It was further part of the conspiracy that defendant KEITH RITSON took defendant FRANK ALARIO, members of his office staff, and their family members to restaurants for meals and drinks.

31.     It was further part of the conspiracy that defendant KEITH RITSON brought meals to the office for defendant FRANK ALARIO and members of his staff and paid for those meals.

32.     It was further part of the conspiracy that, because defendant FRANK ALARIO relied on a personal driver for transportation, defendant KEITH RITSON frequently drove defendant FRANK ALARIO, often to distant locations, including the medical office where defendant FRANK ALARIO practiced in New York.

33.     It was further part of the conspiracy that defendant FRANK ALARIO and defendant KEITH RITSON often traveled together, including to the medical offices where defendant FRANK ALARIO practiced in Florida.

34.     It was further part of the conspiracy that defendant KEITH RITSON and defendant FRANK ALARIO caused the submission of numerous false and fraudulent insurance claims for prescription medications to Pharmacy Benefits Administrator.

35.    It was further part of the conspiracy that defendant KEITH RITSON, defendant FRANK ALARIO, and others caused Pharmacy Benefits Administrator to pay Central Rexall over $2,500,000 for medications.

In violation of Title 18, United States Code, Section 1349.

## COUNTS 2-5
### (Health Care Fraud)

36.    Paragraphs 1-3 and 5-35 of Count 1 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

37.    On or about the dates listed below, in the District of New Jersey, and elsewhere, defendants

KEITH RITSON and
FRANK ALARIO

did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of health care benefit programs, in connection with the delivery of health care benefits, items, and services:

| Count | Date | Execution |
| --- | --- | --- |
| 2 | 10/27/2015 | Defendants KEITH RITSON and FRANK ALARIO caused a prescription for Individual 1 to be completed and faxed to Central Rexall. |
| 3 | 11/4/2015 | Defendants KEITH RITSON and FRANK ALARIO caused a prescription for Individual 2 to be completed and faxed to Central Rexall. |
| 4 | 11/10/2015 | Defendants KEITH RITSON and FRANK ALARIO caused a prescription for Individual 3 to be completed and faxed to Central Rexall. |
| 5 | 12/23/2015 | Defendants KEITH RITSON and FRANK ALARIO caused a prescription for Individual 4 to be completed and faxed to Central Rexall |

In violation of Title 18, United States Code, Section 1347, and Title 18, United States Code, Section 2.

11

## COUNTS 6-9
### (Wire Fraud)

38.     Paragraphs 1-3 and 5-35 of Count 1 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

39.     On or about the dates listed below, in the District of New Jersey, and elsewhere, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, defendants

KEITH RITSON and
FRANK ALARIO

for the purpose of executing such scheme and artifice, did knowingly and with fraudulent intent transmit and cause to be transmitted by means of wire communications in interstate commerce the following writings, signs, signals, pictures, and sounds:

| Count | Date | From | To | Wire Transmission |
|---|---|---|---|---|
| 6 | 12/14/2015 | Defendant FRANK ALARIO's medical office in New Jersey | Central Rexall | Fax transmission of prescription for Individual 5 |
| 7 | 12/15/2015 | Defendant FRANK ALARIO's medical office in New Jersey | Central Rexall | Fax transmission of prescription for Individual 6 |
| 8 | 12/22/2015 | Defendant FRANK ALARIO's medical office in New Jersey | Central Rexall | Fax transmission of prescription for Individual 7 |
| 9 | 1/12/2016 | Defendant FRANK ALARIO's medical office in New Jersey | Central Rexall | Fax transmission of prescription for Individual 8 |

In violation of Title 18, United States Code, Section 1343, and Title 18, United States Code, Section 2.

## COUNT 10
### (False Statements Relating to Health Care Matters)

40.    Paragraphs 1-3 and 5-35 of Count 1 are hereby realleged and incorporated as though set forth in full herein.

41.    On or about September 10, 2015, a representative of Central Rexall sent defendant FRANK ALARIO a form as part of Central Rexall's compliance program.   The form asked defendant FRANK ALARIO to state whether, prior to submitting Central Rexall prescriptions, he spoke with patients, spoke with patients in person or on the telephone, and established a doctor/patient relationship.

42.    On or about September 15, 2015, defendant FRANK ALARIO falsely attested on the form that he met with patients in person and established a physician/patient relationship prior to prescribing Central Rexall medications.

43.    On or about September 15, 2015, defendant FRANK ALARIO caused the form containing his false attestations to be faxed to Central Rexall.

44.    Central Rexall filled prescriptions signed by defendant FRANK ALARIO and submitted claims to Pharmacy Benefits Administrator, and Pharmacy Benefits Administrator paid the claims.

45.    On or about September 15, 2015, in the District of New Jersey, and elsewhere, defendant

FRANK ALARIO

in a matter involving a health care benefit program, did knowingly and willfully falsify, conceal, and cover up by trick, scheme, and device a material fact, and make materially false, fictitious, and fraudulent statements and representations, and make and use materially false writings and

13

documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services.

In violation of Title 18, United States Code, Section 1035, and Title 18, United States Code, Section 2.

## COUNT 11
### (Conspiracy to Wrongfully Obtain and Disclose
### Individually Identifiable Health Information)

46.     Paragraphs 1-3 and 5-35 of Count 1 are hereby realleged and incorporated as though set forth in full herein.

47.     The Health Insurance Portability and Accountability Act ("HIPAA") protects individually identifiable health information from wrongful disclosure and seeks to set national standards to maintain patient confidentiality.

48.     In connection with HIPAA, the United States Department of Health and Human Services enacted regulations to safeguard the privacy of patients' medical records and limit circumstances in which individually identifiable health information or protected health information could be used or disclosed.  The HIPAA law and privacy regulations apply to, among others, health care providers, such as medical doctors, who transmit health information in connection with a transaction covered by the law and privacy regulations.

49.     Defendant FRANK ALARIO was a health care provider and a covered entity under the HIPAA law and privacy regulations.

50.     From in or about August 2014 through in or about February 2016 in the District of New Jersey, and elsewhere, defendants

KEITH RITSON and
FRANK ALARIO

did knowingly and intentionally conspire and agree with each other and others to commit offenses against the United States, that is, to knowingly and without authorization obtain individually identifiable health information and protected health information maintained by a covered entity relating to individuals, and to knowingly and without authorization disclose individually identifiable health information and protected health information to another person, with intent to

15

use such information for commercial advantage and personal gain, contrary to Title 42, United States Code, Section 1320d-6.

### Object of the Conspiracy

51.     The object of the conspiracy was for defendant FRANK ALARIO to give defendant KEITH RITSON access to patients' individually identifiable health information and protected health information, which defendant KEITH RITSON and defendant FRANK ALARIO used to unlawfully obtain money and other benefits by causing the submission of false and fraudulent insurance claims for prescription medications to Pharmacy Benefits Administrator.

### Manner and Means of the Conspiracy

52.     It was part of the conspiracy that, as an outside pharmaceutical sales representative who was not affiliated with, employed by, and who did not have a business associate agreement with defendant FRANK ALARIO's medical practices, defendant KEITH RITSON was not permitted by HIPAA and its regulations to obtain the individually identifiable health information and protected health information of defendant FRANK ALARIO's patients.

53.     It was further part of the conspiracy that defendant KEITH RITSON obtained and defendant FRANK ALARIO caused and facilitated the disclosure of patients' individually identifiable health information and protected health information at his medical practices.

54.     It was further part of the conspiracy that, because only certain insurance plans—primarily those with prescription drug benefits administered by Pharmacy Benefits Administrator—covered the compound medications, defendant KEITH RITSON and defendant FRANK ALARIO accessed patient files and other identifying information and spoke directly with patients for the purpose of determining insurance coverage.

55.     It was further part of the conspiracy that defendant KEITH RITSON was frequently present in patient exam rooms during patient consultations and appointments with defendant FRANK ALARIO, which allowed him to obtain patients' individually identifiable health information and protected health information.

56.     It was further part of the conspiracy that, by allowing defendant KEITH RITSON to be present during patient exams and appointments, defendant FRANK ALARIO caused the disclosure of patients' individually identifiable health information and protected health information to defendant KEITH RITSON.

57.     It was further part of the conspiracy that defendant KEITH RITSON was allowed to access and use areas of defendant FRANK ALARIO's medical offices that contained patients' individually identifiable health information and protected health information, and from which such information could be heard or observed, including areas restricted to staff, hallways outside patient exam rooms, defendant FRANK ALARIO'S office, and areas with patient files, fax machines, and office telephones.

58.     It was further part of the conspiracy that defendant FRANK ALARIO and defendant KEITH RITSON did not disclose to patients for whom defendant FRANK ALARIO prescribed the compound medications their relationship or that defendant KEITH RITSON would receive a commission on the prescriptions, nor did defendant FRANK ALARIO disclose any direct or indirect remuneration or benefit he stood to gain by prescribing the medications.

59.     It was further part of the conspiracy that the disclosure of individually identifiable health information and protected health information was done without patients' informed consent or valid authorization.

17

60.     It was further part of the conspiracy that, in part due to accessing patients'
individually identifiable health information and protected health information to determine insurance
coverage for compound medications prescribed by defendant FRANK ALARIO, defendant KEITH
RITSON received a personal gain and commercial advantage.  Specifically, defendant KEITH
RITSON received from Boardwalk Medical LLC a percentage of the amount that Central Rexall
received from Pharmacy Benefits Administrator for the medications pursuant to Central Rexall's
agreement with Boardwalk Medical LLC.

61.     It was further part of the conspiracy—which was effectuated through the disclosure
of individually identifiable health information and protected health information—that defendant
FRANK ALARIO received a personal gain by receiving free meals, entertainment, travel, and other
remuneration from defendant KEITH RITSON.

**Overt Acts**:

62.     In furtherance of the conspiracy and in order to effect the object of the conspiracy,
defendants KEITH RITSON and FRANK ALARIO committed or caused the commission of the
following overt acts in the District of New Jersey and elsewhere:

a.     Defendant KEITH RITSON and defendant FRANK ALARIO jointly
accessed electronic patient records on an office computer for the purpose of determining whether
a patient's insurance would cover the compound prescription medications, which caused the
disclosure of individually identifiable health information and protected health information.

b.     Defendant FRANK ALARIO brought defendant KEITH RITSON into
patient exam rooms during patient consultations for the purpose of defendant KEITH RITSON
promoting and/or defendant FRANK ALARIO prescribing compound prescription medications
promoted by defendant KEITH RITSON, which caused defendant KEITH RITSON to obtain and

defendant FRANK ALARIO to disclose individually identifiable health information and protected health information.

        c.      Defendant FRANK ALARIO introduced defendant KEITH RITSON to patients as his nephew or otherwise gave patients the impression that defendant KEITH RITSON was affiliated with his medical practice, which caused or facilitated the disclosure of individually identifiable health information and protected health information.

        d.      Defendant FRANK ALARIO directed patients to provide defendant KEITH RITSON with their confidential health information and personal identifiers so that defendant KEITH RITSON could fill out compound medication prescription forms for them, which caused and facilitated the disclosure of individually identifiable health information and protected health information.

        In violation of Title 18, United States Code, Section 371.

## COUNT 12
### (Conspiracy to Commit Money Laundering)

63.     Paragraphs 1-3 and 5-35 of Count 1 and paragraphs 46-49 and 51-62 of Count 11 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

64.     From in or about April 2015 through in or about June 2016 in the District of New Jersey, and elsewhere, defendant

KEITH RITSON

knowing that the property involved in the financial transactions represented the proceeds of unlawful activity, namely, health care fraud and wire fraud, did knowingly conspire and agree with William Hickman and others to engage in monetary transactions by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from health care fraud and wire fraud, contrary to Title 18, United States Code, Section 1957(a).

### Manner and Means of the Conspiracy

65.     It was part of the conspiracy that William Hickman received payments from Central Rexall, which represented proceeds of health care fraud and wire fraud.

66.     It was further part of the conspiracy that William Hickman, through Boardwalk Medical LLC, paid defendant KEITH RITSON, through Life Sciences Medical LLC, a portion of the amounts received from Central Rexall, which represented proceeds of health care fraud and wire fraud.

67.     It was further part of the conspiracy that defendant KEITH RITSON, William Hickman, and others engaged in transactions in amounts exceeding $10,000 with the proceeds of the health care fraud and wire fraud.

20

68.     As part of the conspiracy, defendant KEITH RITSON and William Hickman caused financial transactions affecting interstate and foreign commerce to occur, as set forth below:

a.      On or about October 9, 2015, Keith Ritson received, through Life Sciences Medical LLC, $73,287.16 from Boardwalk Medical LLC.

b.      On or about December 7, 2015, Keith Ritson received, through Life Sciences Medical LLC, $71,792.60 from Boardwalk Medical LLC.

c.      On or about December 28, 2015, Keith Ritson received, through Life Sciences Medical LLC, $181,939.91 from Boardwalk Medical LLC.

d.      On or about February 8, 2016, Keith Ritson received, through Life Sciences Medical LLC, $156,954.61 from Boardwalk Medical LLC.

e.      On or about October 9, 2015, defendant KEITH RITSON caused the transfer of $90,000 from Life Sciences Medical LLC to his personal account.

f.      On or about November 6, 2015, defendant KEITH RITSON caused the transfer of $200,000 from Life Sciences Medical LLC to his personal account.

g.      On or about January 4, 2016, defendant KEITH RITSON caused the transfer of $400,000 from Life Sciences Medical LLC to his personal account.

h.      On or about March 17, 2016, defendant KEITH RITSON caused the transfer of $400,000 from Life Sciences Medical LLC to his personal account.

In violation of Title 18, United States Code, Section 1956(h).

## COUNTS 13-16
### (Money Laundering – Transacting in Criminal Proceeds)

69.     Paragraphs 1-3 and 5-35 of Count 1, paragraphs 46-49 and 51-62 of Count 11, and paragraphs 65-68 of Count 12 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

70.     On or about the dates specified below, in the District of New Jersey, and elsewhere, defendant

KEITH RITSON

did knowingly engage in the monetary transactions specified below by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from health care fraud and wire fraud:

| Count | Date | Amount | Transaction |
|---|---|---|---|
| 13 | 10/9/2015 | $90,000.00 | Transfer from Life Sciences Medical LLC to defendant KEITH RITSON's personal account |
| 14 | 11/6/2015 | $200,000.00 | Transfer from Life Sciences Medical LLC to defendant KEITH RITSON's personal account |
| 15 | 1/4/2016 | $400,000.00 | Transfer from Life Sciences Medical LLC to defendant KEITH RITSON's personal account |
| 16 | 3/17/2016 | $400,000.00 | Transfer from Life Sciences Medical LLC to defendant KEITH RITSON's personal account |

In violation of Title 18, United States Code, Section 1957, and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS

### Count 1

1.      Upon conviction of the conspiracy offense alleged in Count 1 of this Indictment,

defendants KEITH RITSON and FRANK ALARIO shall forfeit to the United States:

      a.      Pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the respective defendants obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the conspiracy to commit health care fraud, contrary to 18 U.S.C. § 1347, and all property traceable to such property; and

      b.      Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, the respective defendants obtained that constitutes or is derived from proceeds traceable to the commission of the conspiracy to commit wire fraud, contrary to 18 U.S.C. § 1343, and all property traceable to such property.

### Counts 2-5

2.      Upon conviction of one or more of the health care fraud offenses alleged in Counts

2-5 of this Indictment, the defendant specified in each count shall forfeit to the United States,

pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the defendant obtained that

constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission

of the health care fraud offense charged in such count, and all property traceable to such property.

Such property includes, but is not limited to, all right, title, and interest in the property listed in the

forfeiture allegation as to Count 1.

## Counts 6-9

3.      Upon conviction of one or more of the wire fraud offenses alleged in Counts 6-9 of

this Indictment, the defendant specified in each count shall forfeit to the United States, pursuant to

18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, the defendants

obtained that constitutes or is derived from proceeds traceable to the commission of the wire fraud

offense charged in such count, and all property traceable to such property. Such property includes,

but is not limited to, all right, title, and interest in the property listed in the forfeiture allegation as

to Count 1.

## Count 10

4.      Upon conviction of the offense alleged in Count 10 of this Indictment, defendant

FRANK ALARIO shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property,

real and personal, the defendant obtained that constitutes or is derived, directly and indirectly, from

gross proceeds traceable to the commission of the Federal health care fraud offense charged in

such count, and all property traceable to such property.

## Count 12

5.      Upon conviction of the money laundering conspiracy offense alleged in Count 12

of this Indictment, defendant KEITH RITSON shall forfeit to the United States, pursuant to 18

U.S.C. § 982(a)(1), all property, real and personal, involved in such offense, and all property

traceable to such property. Such property includes, but is not limited to, all right, title, and interest

of defendant KEITH RITSON in the property listed in the forfeiture allegation as to Count 1.

## Counts 13-16

6.      Upon conviction of one or more of the money laundering offenses alleged in Counts

13-16 of this Indictment, defendant KEITH RITSON shall forfeit to the United States, pursuant to

18 U.S.C. § 982(a)(1), all property, real and personal, involved in the money laundering offense charged in each such count, and all property traceable to such property. Such property includes, but is not limited to, all right, title, and interest of defendant KEITH RITSON in the property listed in the forfeiture allegation as to Count 1.

## SUBSTITUTE ASSETS PROVISION
### (Applicable to All Forfeiture Allegations)

7.      If any of the above-described forfeitable property, as a result of any act or omission of the respective defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third person;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b), to seek forfeiture of any other property of the respective defendant up to the value of the above-described forfeitable property.

A TRUE BILL

FOREPERSON

_Craig Carpenito/mg_

CRAIG CARPENITO
United States Attorney
District of New Jersey

CASE NUMBER:  20-

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

KEITH RITSON and
FRANK ALARIO

INDICTMENT FOR
18 U.S.C. §§ 1349, 1347, 1343, 1035, 371, 1956(h), 1957, and 2



Foreperson

CRAIG CARPENITO
U.S. ATTORNEY, NEWARK, NEW JERSEY

CHRISTINA O. HUD
R. DAVID WALK, JR.
ASSISTANT U.S. ATTORNEYS
CAMDEN, NEW JERSEY
(856) 757-5026

USA-48AD8
(Ed. 1/97)